Abbas v. Attorney General of the United States, who is now General Lynch. We'll hear first from Ms. Kwon. Good morning, Your Honor. May you please support? My name is Angela Kwon, attorney for Mr. Aamir Abbas. His petition for review comes from... You have a lovely, low voice. Could you raise it a little bit so I can hear you? Oh, I'm sorry. I'll speak louder. Is that better? A little bit. If you're even talking closer to the microphone, that might help. I'm an old man and deaf as a board, so, you know... Where should I begin? With my name? Yeah, it's a good place. Let's just start the clock again and go ahead. Ms. Kwon? Good morning, Your Honors. May you please support? My name is Angela Kwon. I'm the attorney for Mr. Aamir Abbas. His petition for review comes from the final order of removal from the Board of Immigration Appeals. Mr. Aamir Abbas is a legal permanent resident, and the reason he was in the immigration removal proceeding was because he committed one misdemeanor crime against his wife. There was a domestic battery in 2006. There was no bodily injury or anything, but he did serve 10 days in jail. After that incident, in 2007, he was served with notice to appear, and from 2007 until now, he's been in the removal proceeding. Luckily, though, the couple is still married to each other. In fact, they were married in 2001 in Pakistan, and the reason he came to this country was because his wife's immigrant visa petition filed on his behalf. During the 13 years of their marriage, they bore two children, two U.S.-born children who are girls, and they're aged 11 and 7. Mr. Abbas has been the sole provider for the family, and he has no other criminal convictions. So when he was placed into the immigration proceedings, it seemed like his outlook was bright, that he's retained an immigration attorney named by Marshall Hong, and he was going to be readjusted by his wife's new immigrant visa petition, and through that visa petition, he was going to be readjusted. So as an arriving alien, he was going to be able to file for a 212H waiver, which would waive his inadmissibility of one misdemeanor conviction of domestic battery. However, the things did not go the way it was planned in 2007. There are two components to that. One is he has this tumultuous, very dramatic relationship with his U.S. citizen wife. They're not divorced, but there were moments when the couples were not getting along, and as you can see in the records, there were three separate immigrant visa petitions filed by the wife, and she withdrew one, and the one was denied because Mr. Hong failed to apply, or he failed to submit timely evidence of birth certificate of the children. And the third immigrant visa petition was approved, and Mr. Abe was able to, if given the chance, able to readjust at this time. However, the second component of the why things didn't go the way it did was he's a removable defense attorney, Mr. Marshall Hong. Mr. Hong represented Mr. Abe from 2007 to 2013, and this court actually had witnessed Mr. Hong's misconduct when Mr. Hong filed a petition to review in 2013, and he failed to apply for or he did not submit any brief on behalf of Mr. Abe. He failed to communicate with the court, and as the court record illustrates, that he completely cut off any communication with the court and also with Mr. Abe. Mr. Abe, who's gone through this long proceeding of removal, had no reason to know that his case was basically stuck and that Mr. Hong didn't perform his duties as his removable defense attorney until- Ms. Kwon, the government has argued that he should have been on notice in May of 2013 of the deficiency. That's correct. Could you respond to that point? That's correct. In the May 13 decision, the Board of Immigration Appeals changed its position that, well, we thought this was the marriage of-it didn't say sham marriage, but basically the marriage was not bona fide. Look, but if it was real marriage, he failed to submit 485, the adjustment application, and the I-601 waiver for his inadmissibility. But he was represented by Mr. Hong, who was supposedly know all these things and supposedly prepare him for it, but instead of doing anything, Mr. Hong filed a petition for review with this court. So in Mr. Abe's point of view, he did what he can do. He retained his counsel to fight this case in his opinion. He is not an immigrant attorney, obviously. He doesn't know what the technical requirements are due. And according to the Board of Immigration, you know, he did not have bona fide marriage, which was, you know, pretty much an insult to Mr. Abe, whose only reason to fight this case all this time is to be here for his family. I mean, he was- Well, from the Board's perspective, his wife did withdraw two of those petitions, right? Right. So how are they supposed to- But there was another petition- And also when Mr. Abe became aware of what Mr. Hong did not do, he did, as a reasonable person, retain a new removal defense counsel. And through his new counsel, he filed a motion to consider it with the Board. And the Board denied it again, citing that, you know, he should have been unnoticed from our decision earlier, which was, you know, the previous motion to reconsider was filed by Mr. Hong, who did not meet all the requisite filing requirements or remedies. So Mr. Abe is sort of in a position where, well, he only became aware of Mr. Hong's conduct in, you know, sometime it seems like March 2014, when Mr. Hong failed to return his phone calls, failed to respond to his email. So as a reasonable person, when his attorney refused to communicate, he went out on his way to find out what was going on. And he hired a new defense counsel. And the Board says he should have been unnoticed. And, you know, the Board is saying Mr. Abe did not exercise due diligence, which is contrary to what's in the record. And the Board, because the Board found that, you know, Mr. Hong's performance did not raise the level of ineffective assistive counsel, the Board did not exercise equitable toll timing. And basically they denied the motion to reconsider as time and numerically barred. But it's a looping argument. You know, Mr. Abe has retained an attorney who did not do things that were set out in 2007. And years and years later, he did not know that the direction the previous attorney was taking was wrong. And the reason he did find out it was wrong was because of the failure of Mr. Hong's communication. And that would be sanctionable in any jurisdiction. And as this Court had experienced, for no reason, Mr. Hong did not respond to the Court's even, you know, threatening of sanctioning a disciplinary action against him. I thought Mr. Hong had said, in essence, I didn't get paid. We just preserved, we filed a petition for review, paid the filing fee, and then my client never paid me to follow up. It's not in the record, but according to Mr. Abe, he had paid Mr. Hong $5,000. I thought you submitted Mr. Hong's response to the disciplinary proceeding. Right, that's what he's claiming. There's a question about whether that's properly in the record, but I thought you told us that. That's his petition that he didn't do anything because he didn't get paid. But, you know, any reasonable attorney who takes on a case understands that, you know, he or she cannot just not do anything. He could have filed a motion to withdraw. He could have called Mr. Abbas, worked something out. There are various things that many reasonable attorneys will do in a situation like this, when you're assisting a client facing a deportation or removal, which would, you know, separate him from his family. It's a grave issue, isn't it? So the attorney obviously has a burden to do something, but in this case, Mr. Hong chose not to do anything. And that is ineffective assistance of counsel, and the board should have recognized that and should have given equitable toll and, you know, reviewed Mr. Abbas' motion for reconsideration. And so today we seek that this court, hearing all this evidence, remand this case back to the board because he does have a 485, you know, and he does have I-130 approved. There is no other issue other than this one domestic violence. And what's a 485 and what's a 130? 130 is the immigrant visa petition. Is which? Immigrant visa petition. Okay. And the 485 is the adjustment application. By the spouse or by him? That was already filed with the board. Thank you. Thank you. For the attorney general, Ms. Benner-Leon. Good morning, Your Honors. May it please the court. Wendy Benner-Leon on behalf of the attorney general. The court should deny the petition for review because the board properly exercised its discretion in denying a petitioner a second motion to reopen. Counsel, before you go further, could you tell us where this case stands in the policy review that's ongoing? Yes. I've been in contact with DHS and they consider this case an enforcement priority. Why? They didn't explain. But I believe it's based on the factual circumstances in this case. They didn't tell me, but I asked them and it's an enforcement priority. Could you say that a little louder? I was just saying that I have contacted DHS and they have indicated that this case is an enforcement priority, so they do not want to exercise prosecutorial discretion. Okay. In this case, the court reviews the board's decision under the abuse of discretion standard, which means that the court won't disturb that decision unless it's without a rational explanation, it inexplicably departs from established policy, or it's based on an impermissible basis like invidious discrimination. None of those things are present here. The board properly denied the motion because, one, it was untimely, and two, it was long past the 90-day filing period for a motion to reopen. Of course, the board may consider whether to equitably toll that limitations. In this case, the alien did not demonstrate, though, that he exercised due diligence, and therefore the board didn't toll the limitations. If I understand your position, it is that the client should have understood why he lost in the May 2013 decision. Is that right? No, that's not totally accurate. It's partially accurate. The position is that in May 2013, he's alleging that his attorney provided ineffective assistance by not attaching the application for adjustment status, the I-485, and the board's decision in May 2013, which he received a courtesy copy of, said that it was being denied in part because there was no application and the supporting documents weren't provided. There was not an application for adjustment status. The board said, why then, if you know that something wasn't submitted, why the application wasn't submitted, did you not do anything about it? And so what they're saying is not that you have to understand legally the consequences or what that means. You don't even have to know what an adjustment of status application is, but if you know that it was denied, what you're asking for has been denied because something hasn't been attached, and it clearly states on the decision, it triggers the duty to start to inquire what's going on here. Did he go to his attorney? Did he ask his attorney why it wasn't disattached? The follow-up was a petition for review in this court, right? There was a petition for review filed. Part of the problem with this case is he simply provides no accounting of his activities. He generally states that he contacted a new attorney, but we don't know when. It was a year after the motion to reconsider, the May 2013 decision was issued. It was a year after that that he filed the motion to reopen, almost a year, one month shy of a year. Well, he sort of says he thought things were just ongoing, I guess. I guess. I mean, he said there was not communications, but when did he try? He just did not account for what he was trying to do. He gives no idea when he tried to communicate with his attorney, what his attorney told him, any kind of discussion that they had, how soon he went to retain new counsel. There's no dates, no nothing. All we have is the motion to reconsider that clearly provided some notice, not some notice, provided notice of the reason for the denial. It said that the reopening will not be, we will not reopen because you didn't attach the application. And that is required under the regulations. If you're trying to seek relief and there's an application involved, you need to attach it with the motion to reopen. And that's important because there's questions on there. In the intervening years between 2013 and when the motion to reconsider was filed, that was almost 10 years, and there's questions in there that you would have to answer about your conduct between the time he came in and when he didn't. So he could not establish prima facie eligibility for the relief. And on top of that, there was no approved visa petition at that time. Could I ask you, Counsel, about this question about the Lozada standard for ineffective assistance of counsel? Yes. There's something that's kind of mysterious to me about that. One of the, you have to, the client has to file a formal complaint with disciplinary authorities. Yes. And that was done here, correct? Yes. And then there's also a requirement about giving notice to the attorney. And as I understand it, your position here is he gave notice to his attorney, but not far enough in advance, right? Correct. So it was three days, right, before he filed the motion to reopen? Actually, it was two. I mean, the board said three, but actually it was two. The letter was dated two days before he filed the motion. Well, my principal question is, under the Lozada approach, why is it essential that the attorney has an opportunity to respond before the motion to reopen is filed or motion to reconsider is filed? And the reason I'm asking about this is we face a kind of Goldilocks problem here, right? Because on the one hand, the board is going to say, well, once you see there's a problem, you've got to act with due diligence. You've got to move really fast. And if you don't, we're going to exercise our discretion and close the door on you, right? Yes. They have that option. But here they're saying, now, on this one, you move too fast. You filed your motion. And I don't understand, it's not as though the board is going to act instantly on this motion. So why isn't it fair to just give the attorney notice we're complaining about this and give the attorney an opportunity to respond before the board decides? I mean, the requirement is very important because, well, first of all, I would point out that this court in, I believe it was the, I cited my brief. Maranoff? Well, no, actually, Yong Gao. Said that normally it should not take more than two and a half months to prepare a proper motion to reopen that complies with the Lizada requirements. And I think there should be no problem. It's not really a difficult process, but it is important that they wait for the attorney's response, because that is what provides the board with the factual basis for deciding, what has happened, you know, what kind of agreement they had. If the attorney disagrees and says those allegations are false, I mean, if the attorney says those allegations are false, that is something the board needs to have. Right. And they can get it, right? Yes. Yes. I mean, the rule does say if the attorney refuses to, won't provide a response, then they can allow it. So does the rule say how long an attorney? No, the rule doesn't say it, but two days is obviously not enough. I mean, I believe. What's enough? There's no set time. I mean, you know, but I think that's just a reasonable thing that I would think give at least a person like two weeks to respond or follow up with it and say I'm sending this, I want to file my motion to reopen. You know, there's, you can do it. It's not a difficult process and he was represented by counsel. But you would agree there's also a risk that if you're unduly patient, the board can say you haven't acted with diligence once you found there was a problem, right? Of course. But it shouldn't take long. It should not take a year to file a motion to reopen. When you had noticed that an application was not filed. No, he obviously didn't get it. I mean, he didn't understand it at the time. But I understand your point. But once he went to Mr. Frieselman, he was moving pretty fast. Well, we don't know. He did not state when he went to that attorney. Did he wait until right before the attorney filed a notice of appearance? If he did, that was ten months. The affidavit he provides does not provide an accounting that is specific to let the board know that he exercised due diligence. You cannot sit on your rights. There was something there that at least triggered him to do something, to go to his attorney and say what happened. He did not state what he did or the dates that he did it. And may I make one final just comment? This court doesn't need to get to the Lizada requirement or the decision if it decides that due diligence was not exercised because this court stated in Patel that before you reach the ineffective assistance issue, the board either has to equitably toll or the motion to reopen had to be timely. So the court does not need to reach that issue if it decides that he exercised, did not exercise due diligence. Thank you. Thank you, Your Honor. Ms. Kwan, take one minute for rebuttal if you'd like. Your Honor, as for the enforcement priority, Mr. Abbas has one conviction of misdemeanor domestic battery. That's their discretionary call, right? Another issue would be that the timeline of what he has done once he had discovered that Mr. Hong failed to perform. And as he stated in his affidavit, he became alarming when Mr. Hong failed to return his email and phone calls. And that was March 2014. That's when he went to a new counsel. And with the new counsel, as you correctly pointed out, he moved fast to preserve his rights. As a reasonable person, point of view, he was fighting this immigration case for seven years with one attorney. And each time he was unsuccessful, but his attorney was the only one who believed that he had a bona fide marriage and he deserved to be in this country, not the board, not the immigration judge. So for him to become aware that the attorney failed to do something, that we're looking into the technical requirements. That attorney should have handled it, not the client. Thank you, Ms. Kwan. The case is taken under advisement.